F. W. McROBERTS, Receiver, Appellee, v. F. B. ORDWAY, Appellant.

OCTOBER 23, 1928.

948

*O. P. Bennett* and *Prichard & Prichard*, for appellant.

*Crary & Crary* and *George E. Allen*, for appellee.

Evans, J.—There is no material dispute of fact in the record. The previous events leading up to the transaction involved in the controversy may be stated briefly. On June 1, 1919, the defendant loaned to D. E. Brainard $6,500, and took his promissory note therefor, payable in five years from date. On July 1, 1919, the funds so borrowed by Brainard were used by him in the purchase of stock in the bank in question. Upon such purchase, he became its cashier, and later became its president. In 1923, the defendant visited Brainard, and requested a partial payment upon the $6,500 note, which was not yet due. The purported reason for such request was that the defendant was in present need of money. It was agreed between him and Brainard that, if he would execute his note to the bank for $1,500, the bank would loan him the amount, and that Brainard himself would pay the bank such $1,500 note when it became due. As a result of such interview, the defendant was furnished with blank forms of note, for the purpose of his use. On a later date, he executed such a note, and mailed it to Brainard, or to the bank; and pursuant thereto, he received by mail the sum of $1,500. When his note became due, Brainard failed to pay it, and defendant gave a new note in renewal thereof. The execution of this note was attended with the same understanding between him and Brainard, viz: that Brainard would pay the note. Ordway, himself, treated the remittance of $1,500 as a payment upon his $6,500 note, and he indorsed the payment accordingly. In 1926, Brainard died, leaving the note unpaid. The implications of the record are that neither the bank nor the estate of Brainard is solvent. The argument for the defendant is:

> (1)   That the bank got the benefit of the $6,500 loan by

him to Brainard in the first instance, because it was used by Brainard to purchase the treasury stock of the bank, and it was thereby added to its working capital. This contention is unsound. Whatever the practical benefit may have been to the bank to sell its treasury stock to Brainard, yet in a legal sense it gave full consideration for the purchase price. It was not bound to inquire into the source of the funds produced by Brainard in payment thereof.

(2) The defendant further contends that his arrangement with Brainard in 1923, whereby he gave his note, in order to enable Brainard to make payment upon the $6,500 note, was a transaction that accrued to the benefit of the bank, and that the bank accepted such benefit, and was, therefore, bound by the act of its president.

This contention also is unsound. This transaction was had wholly with Brainard. It was one in which Brainard, and he alone, was personally interested. The bank, as such, had no interest therein. Nor did the bank have any representative who participated in the transaction or had knowledge thereof, except Brainard. The respective interests of Brainard, on the one hand, and the bank, on the other, were in conflict, and Brainard could not bind the bank by his representations or by his promises. One of the reasons given by Brainard to the defendant, why he wished the defendant to sign the note, rather than himself, was that his own note would not be accepted by the bank or the bank examiner. If his *note* would not be accepted, why should the bank be deemed bound by Brainard's *oral promise* to pay the defendant's note?

It is further urged by the defendant that it was to the interest of the bank that the defendant should not sue its president upon the $6,500 note which he held. But such note was not due, and he could not have maintained a suit thereon.

The appellant complains of certain rulings of the court rejecting offered evidence. In our consideration of the facts of the case, we have taken full account of such offered evidence, and have given the appellant the benefit of it in our statement of facts. We find nothing in any offered evidence that could change the result herein. Though the defendant pleaded that

he was induced to sign the $1,500 note by the fraudulent representations and conduct of Brainard, and though he predicates argument upon such allegations, yet we find in the record no evidence of fraud, either introduced or offered. If there were fraud, it was wholly as between the defendant and Brainard. The bank had no part in it; nor did it, in a legal sense, benefit thereby.

The defendant is confronted with a severe loss, but we see no way of relief for him herein.

The order of the district court must, accordingly, be—
*Affirmed.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.